IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 21, 2005 Session

## JOSEPH MILES v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Robertson County**
**No. 96-0237     John H. Gasaway, III, Judge**

———————

**No. M2003-01871-CCA-R3-PC - Filed September 26, 2005**

———————

The petitioner, Joseph Miles, appeals from the denial of his petition for post-conviction relief. The single issue presented for review is whether the petitioner was denied the effective assistance of counsel. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and J.C. MCLIN, JJ., joined.

Phillip L. Davidson, Nashville, Tennessee, for the appellant, Joseph Miles.

Paul G. Summers, Attorney General & Reporter; Blind Akrawi, Assistant Attorney General; and Dent Morriss, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On May 12, 1999, the petitioner was found guilty of second degree murder. A Range II, forty-year sentence was imposed. On direct appeal, this court affirmed the conviction and sentence. State v. Joseph Miles, No. M1998-00682-CCA-R3-PC (Tenn. Crim. App., at Nashville, Feb. 16, 2001). Application for permission to appeal to our supreme court was denied on June 18, 2001.

The opinion of this court on direct appeal contains a summary of the facts relating to the murder of the victim, Antwaun Elliott. On December 22, 1995, the unarmed victim was shot in the head by the petitioner from a range of one to two inches in the lobby of an Arby's Restaurant in Springfield. While the petitioner was in prison, his then wife, Lisa Groves, developed a relationship with the victim, a co-worker at a Wendy's Restaurant. Eventually, the victim fathered a child by Ms. Groves and when the petitioner was released from prison, he and the victim had several antagonistic encounters. On one occasion, the victim shot the petitioner in the arm and was charged with aggravated assault, a charge later reduced to simple assault with a disposition of judicial diversion, see Tenn. Code. Ann. § 40-35-313, because of what appeared to the state to be a strong case of self-

defense. There was evidence that after his release from prison, the petitioner had stalked the victim, confronting him repeatedly prior to the initial shooting. An eyewitness to the murder testified that the victim was standing in the lobby of the restaurant when the petitioner, armed with a revolver, drove into the parking lot, jumped out of the car, and ran inside. The witness testified that the victim had tried to get away but the petitioner caught him, shot him in the head from close range, and then drove from the scene.

On December 4, 2001, the petitioner filed a petition for post-conviction relief alleging that both his trial counsel and his attorney on appeal were ineffective. Among other things, the petitioner expressed particular concern that the jury was aware that he had been in prison prior to his trial and that appellate counsel had failed to present the issue of prosecutorial misconduct on appeal. On February 14, 2002, the petitioner amended his petition, alleging newly discovered evidence. After the appointment of counsel, the petition was again amended to include allegations that trial counsel had been ineffective by failing to call certain witnesses, by failing to fully develop the evidence of the prior shooting incident, by failing to put forth expert testimony regarding the petitioner's state of mind, by failing to object to the all white jury panel, by failing to object to the final argument by the state, by failing to allege self-defense, and by using the assistant district attorney general as a witness for the defense.

At the evidentiary hearing, not all of the issues were addressed. The petitioner testified that he believed his best theories of defense were voluntary intoxication and self-defense. He claimed that he provided a list of witnesses to his trial counsel that would have been helpful on the latter theory, including Renea Mitchell, who could have testified that the victim had tried to force the petitioner's vehicle into the path of an oncoming vehicle on a prior occasion, and Tammy Johnson, who could have testified that Ms. Groves had once attempted to stab the petitioner in the back. He testified that he had provided his trial counsel with the names of Ruby Brewer, who knew that the victim had followed him on one occasion, and Rodney Brewer, who had been sent to his residence to ask him to meet Ms. Groves. The petitioner also testified that he provided his counsel with the names of Deborah Gardner, who would have testified that Ms. Groves was jealous of his relationship with other women, and James Overby, who had provided him with information that the victim was armed on the night of the shooting. He also claimed that he provided trial counsel with the names of Larry Cook, who had information similar to that of Mr. Overby, and James Maxey, his parole officer, who knew about the conduct of Ms. Groves during his time in prison. The petitioner expressed disappointment that his counsel failed to call any of those prospective witnesses to testify at trial.

The petitioner testified that it was commonly known "on the streets" that one would likely be killed in a feud like this unless there was a pre-emptive strike. It was his opinion that the police department had not adequately protected him after the first shooting. He expressed suspicion that Detective William Watkins had taken a gun from the body of the victim after the shooting and then purposely suppressed the evidence.

The petitioner also complained about the manner in which trial counsel handled the testimony of Lance Baker, the assistant district attorney general who was called as a defense witness, explaining "when he testified at my trial in 1998, everything that he said in Clarksville, they just disregarded it, they just [threw] it away, it didn't exist. He changed his whole testimony." The assistant district attorney general had been called as a witness by the defense to establish that the victim had been charged with aggravated assault and had entered a plea of guilty to a reduced charge of simple assault. The petitioner, who did not testify at his trial, contended at the evidentiary hearing that in this prior incident the victim had followed him in his vehicle and, when the petitioner stopped, walked to his car and fired a single shot into his arm.

The petitioner testified that he had asked his trial counsel to arrange for a psychological evaluation and, while there was psychological testimony presented on his behalf during the trial, he expressed dissatisfaction with the results. The petitioner also complained that his trial counsel never challenged the all white jury and never asked the trial court for jury instructions on self-defense.

On cross-examination, the state elicited testimony that Dr. Anne Durrant, a licensed psychologist, had counseled the petitioner on several occasions during his period of incarceration. Although the petitioner had no recollection as to her testimony at trial, the record establishes that she testified that the petitioner was upset because of Ms. Groves's relationship with the victim, that he suffered sleep loss, humiliation, and embarrassment, but had made no threats against either Ms. Groves or the victim during their sessions. The petitioner also acknowledged that he was "drinking and drugging" prior to the shooting. He specifically admitted that he had used crack cocaine just before the murder.

Trial counsel testified at the evidentiary hearing that he had investigated the prior aggravated assault charge against the victim. It was his recollection that the petitioner and four other individuals arrived at Ms. Groves's residence and that the victim, who was there, left but was followed by the petitioner and the four others. He determined that when the victim stopped, the petitioner approached him, and the victim then shot the petitioner in the arm.

Trial counsel explained that he had called the assistant district attorney as a defense witness at the specific request of the petitioner in order to establish that the police had been overly lenient with the victim and to demonstrate police prejudice toward the petitioner. According to counsel, the petitioner wanted the jury to know that the state had reduced the charge and placed the victim on diversion without even talking to him.

Trial counsel also explained that the petitioner, who had four prior felony convictions, chose not to testify. He recalled that the petitioner had been on parole for only five days prior to the shooting. Counsel testified that, according to his investigation, the victim was unarmed at the time he was shot by the petitioner.

As to the voluntary intoxication defense, trial counsel testified that the petitioner's cousin, Eric Miles, who was a state witness, testified that the petitioner was smoking crack "to keep himself

numb" just before the shooting. According to the record of the trial, Miles stated that when he objected to the petitioner's use of the illegal drug in his car, the petitioner asked permission to smoke his drugs in Miles's back yard. Miles had also testified at trial that he saw the petitioner shoot at a young male, who was running toward an Arby's Restaurant, and then get into a little blue car and drive to the restaurant after him.

Trial counsel also contended that the only reason that the charge was not first degree murder was because the state had made a mistake in preparation of the indictment, inadvertently omitting an allegation of premeditation. He stated that he was pleased that voluntary manslaughter instructions had been provided to the jury but he conceded self-defense instructions were not.

At the conclusion of the evidentiary hearing, the trial court denied relief, specifically finding as follows:

(1) The petitioner knowingly and voluntarily chose not to exercise his right to testify, primarily because of his prior criminal history;

(2) trial counsel was not ineffective for having failed to call as witnesses those individuals who might testify that the petitioner was fearful of the victim and had to act preemptively as a matter of self-defense;

(3) trial counsel was not ineffective for having failed to object to a comment by the prosecution, if any such comment was made, on the right of the petitioner to remain silent;

(4) trial counsel was not ineffective for having failed to further develop the testimony about the mental condition of the petitioner;

(5) trial counsel was not ineffective for having failed to develop evidence which would have warranted an instruction of self-defense, particularly in view of the fact that the petitioner chose not to testify; and

(6) there was no basis for trial counsel to object to the racial composition of the jury and no evidence that the petitioner's constitutional rights were violated in that regard.

In this appeal, the petitioner argues only that trial counsel was ineffective for having failed to call those witnesses identified by the petitioner during the evidentiary hearing. The state responds to that issue and also addresses the petitioner's claims in the post-conviction court that his trial counsel was ineffective for failing to insist on an instruction of self-defense, for failing to object to the composition of the jury, and for failing to further develop the psychological testimony.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy

of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). The error must be so serious as to render an unreliable result. Id. at 687. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. Id. at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

In Black v. State, 794 S.W.2d 752 (Tenn. Crim. App. 1990), this court enumerated the standard for establishing prejudice by counsel's failure to subpoena witnesses. To establish prejudice, the petitioner must: "(1) produce the witness at his post-conviction hearing; (2) show that

through reasonable investigation, trial counsel could have located the witness; and (3) elicit both favorable and material testimony from the witness." Denton v. State, 945 S.W.2d 793, 802-03 (Tenn. Crim. App. 1996) (citing Black, 794 S.W.2d at 757). This standard requires a petitioner to produce the uncalled witness at the post-conviction proceeding so that the court need not speculate as to the materiality of the testimony or credibility of the missing witness. Black, 794 S.W.2d at 758.

While the post-conviction court allowed the petitioner to provide a summary of what he believed the various witnesses might testify to, if called, none were present at the evidentiary hearing. Thus, there is no proof in this record as to their actual testimony. Moreover, it does not appear from the record that the post-conviction court was particularly impressed with the proffered evidence. In our view, it was well established that there was a history of discord between the petitioner and the victim. The statements, if accurate, could have added little to the volatile nature of the relationship between the two men. That the petitioner chose not to testify with four prior felony convictions and having been released from prison only five days before the killing appears to be a wise tactical decision. By all appearances, he would have been an easy target on cross-examination regardless of any number of witnesses who might have had information about the rivalry between the petitioner and the victim. His choice not to testify, however, would have rendered even less helpful much of the supporting evidence the petitioner wanted to introduce through the various witnesses he named for his trial counsel. In summary, the evidence does not preponderate against the post-conviction court's conclusion that the petitioner was unable to establish either deficiency in performance or prejudice in result for the failure to call these witnesses.

The fact that the petitioner chose not to testify also hampered his chances for a self-defense instruction to the jury. The testimony of the assistant district attorney general about the prior shooting incident served as little hope. Although the petitioner suffered a gunshot wound in the prior incident and the victim was arrested for aggravated assault, the assistant district attorney general, while corroborating the shooting, explained that the petitioner and four other individuals initiated the confrontation with the victim at Ms. Groves's residence. He testified that the victim left and that the petitioner followed, accompanied by the four other men. The assistant district attorney general related that his investigation suggested that it was the petitioner who approached the victim, apparently in a threatening way, and then the victim shot the petitioner in the arm. He explained that self-defense was plausible, thus resulting in a reduced charge to simple assault with placement on judicial diversion. It was a first offense for the victim, who was nineteen years old at the time and, by comparison, the petitioner had a significant prior felony record.

The evidence at trial and the evidentiary hearing established that the petitioner saw the victim at a service station, armed himself, and fired a shot in his direction. He pursued the victim into an Arby's Restaurant, grabbed him, and shot him in the head from close range. The victim was unarmed. Despite any number of previous altercations between the petitioner and the victim, these undisputed facts placed an unusual burden on trial counsel to manufacture a viable self-defense claim. A voluntary manslaughter conviction would appear to have been the most optimistic verdict possible. In our view, the evidence does not preponderate against the findings of the post-conviction

court that the circumstances did not warrant a self-defense charge. The petitioner produced nothing at the evidentiary hearing to indicate otherwise.

There is no constitutional requirement that juries mirror the community or reflect the various distinctive groups within the population. Taylor v. Louisiana, 419 U.S. 522, 538 (1975). To establish an improper jury venire, one must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to the systematic exclusion of the group in the jury-selection process.

State v. Nelson, 603 S.W.2d 158, 161 (Tenn. Crim. App. 1980) (quoting Duren v. Missouri, 439 U.S. 357, 364 (1979)). No person has a constitutional right to be tried by a jury of his own race, either in whole or in part. Harvey v. State, 749 S.W.2d 478, 481 (Tenn. Crim. App. 1987); see also Wheeler v. State, 539 S.W.2d 812, 815 (Tenn. Crim. App. 1976). The mere fact that there were no African Americans on the jury is not proof of a violation of any right. Harvey, 749 S.W.2d at 481. There was simply no evidence offered at the post-conviction hearing that the selection process was unconstitutional, only a complaint to trial counsel that the jury was entirely white.

It may be a violation of equal protection for the state to remove black jurors from a jury. The burden is first on the accused to make prima facie showing of the use of peremptory challenges to exclude a cognizable racial group and, once met, the burden then shifts to the state to come forward with an acceptable, neutral explanation. See Baston v. Kentucky, 476 U.S. 79, 93-94 (1986). There was no evidence offered by the petitioner that the state had used its peremptory challenges to assure that the jury was entirely white.

Although not argued on appeal, the petitioner contended during the evidentiary hearing that trial counsel was ineffective for having failed to further develop medical proof as to his state of mind at the time of the shooting. The state chose to brief the issue on appeal. Again, however, the petitioner failed to present Dr. Durrant or any other expert to testify at the evidentiary hearing. It is incumbent upon the petitioner to do so in order to establish either deficiency in performance or prejudice in result. Black, 794 S.W.2d at 757-58.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE